UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN PARKER, Individually and on
Behalf of All Others Similarly
Situated; and JAMIE BARTLETT,
Individually and on Behalf of
All Others Similarly Situated,

                                                  1:17-CV-0397
                Plaintiffs,                 (GTS/CFH)

v.

SAVAGE FUELING CORPORATION,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

COOPER ERVING & SAVAGE LLP           CARLO A.C. DE OLIVEIRA, ESQ.
  Counsel for Plaintiffs
39 North Pearl Street, 4th Floor
Albany, New York 12207

SHELLIST, LAZARAZ, SLOBIN LLP        RICARDO J. PRIETO, ESQ.
  Co-Counsel for Plaintiffs                    ROBERT R. DEBES, ESQ.
11 Greenway Plaza, Suite 1515
Houston, Texas 77046

DLA PIPER LLP                                  BENJAMIN M. GIPSON, ESQ.
  Counsel for Defendant                          KATHERINE J. LIAO, ESQ.
2000 Avenue of the Stars, Suite 400 North Tower    MARIA C. RODRIGUEZ, ESQ.
Los Angeles, California 90067                 DANIEL E. TURINSKY, ESQ.

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this Fair Labor Standards Act ("FLSA") action filed by

John Parker ("Plaintiff Parker") and Jamie Bartlett ("Plaintiff Bartlett") against Savage Fueling

Corporation ("Defendant"), is Defendant's motion to dismiss the second claim of Plaintiffs'

Amended Complaint to the extent it is asserted by Plaintiff Parker for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 21.) For the reasons set forth below, Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Claims

Generally, liberally construed, Plaintiff Parker's original Complaint alleges that, between approximately April 10, 2011, and April 10, 2017, in or around Albany, New York, Defendant violated the rights of Plaintiff Parker (a fuel technician) and those similarly situated by failing to pay him one and one-half his regular rate of pay for time worked in excess of 40 hours per work week and by failing to pay him for "spread of hours" wages.[1] (*See generally* Dkt. No. 1 [Pl. Parker's Original Compl.].) Generally, based on these factual allegations, the original Complaint asserts the following three claims: (1) a claim that Defendant violated the overtime wage provision of the FLSA, 29 U.S.C. § 201, et seq.; (2) a claim that Defendant violated the overtime wage provision of N.Y. Lab. Law § 191; and (3) a claim that Defendant violated the "spread of hours" provision of 12 N.Y. Comp. R. & Regs. ("NYCRR") § 142-2.4. (*Id.*)

Within 21 days after Defendant served its motion to dismiss, Plaintiff Parker filed (as a matter of right under Fed. R. Civ. P. 15 [a][1][A]) an Amended Complaint. (*See generally* Dkt. No. 23 [Pls.' Am. Compl.].) Generally, liberally construed, the Amended Complaint alleges that, between approximately April 10, 2011, and June 8, 2017, in or around Albany, New York, Defendant violated the rights of Plaintiff Parker, Plaintiff Bartlett (also a fuel technician), and

---

[1] "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday," and "includes working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 142-2.18.

those similarly situated by failing to pay them one and one-half their regular rate of pay for time worked in excess of 40 hours per work week. (*Id.*) Generally, based on these factual allegations, the Amended Complaint asserts the following two claims: (1) a claim that Defendant violated the overtime wage provision of the FLSA, 29 U.S.C. § 201, et seq.; and (2) a claim that Defendant violated the overtime wage provision of 12 NYCRR § 142-2.2. (*Id.*)

Familiarity with these claims and the factual allegations supporting them in Plaintiffs' Amended Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

### B. Parties' Briefing of Defendant's Motion

Generally, in support of its motion to dismiss, Defendant argues as follows: (1) the second and third claims of Plaintiff Parker's original Complaint must be dismissed because Plaintiff Parker waived his right to seek relief for claims related to his employment against Defendant by executing a "Severance Letter" dated October 6, 2016, and signed by Plaintiff Parker on October 10, 2016; and (2) in the alternative, the third claim of Plaintiff Parker's original Complaint must be dismissed because 12 NYCRR § 142-2.4 does not apply to employees whose wages exceed the minimum wage. (*See generally* Dkt. No. 21, Attach. 1 [Def.'s Mem. of Law].)

After the filing of the Amended Complaint, Defendant filed a letter-brief which, liberally construed, advised the Court that, while Plaintiff Parker has abandoned the third claim of this original Complaint (thus mooting Defendant's motion to the extent that it challenged that third claim), Defendant's motion is still viable to the extent that it now challenges the second claim of Plaintiff's Amended Complaint. (Dkt. No. 27 [Def.'s Letter-Brief].)

Generally, in response to Defendant's motion, Plaintiffs argue as follows: (1) because Defendant admits in a declaration that it did not pay Plaintiff Parker overtime wages, the second claim in the Amended Complaint is "plausible" for purposes of *Twombly* and *Iqbal*; (2) in any event, Plaintiffs' Amended Complaint moots Defendant's motion to dismiss Plaintiff Parker's original Complaint because an amended complaint supersedes an original complaint in all respects (and it is "typical[]" for an amended complaint to moot a motion to dismiss); (3) in the alternative, Defendant's motion (which does not challenge claims asserted by a Plaintiff other than John Parker) is mooted by the fact that Plaintiffs' Amended Complaint adds Jamie Bartlett as a Plaintiff; (4) Defendant's motion is also mooted by the fact that the Severance Letter may no longer be considered on Defendant's motion to dismiss because the Severance Letter is a document outside of the record and is not integral to the Amended Complaint, which abandoned the third claim of the original Complaint; and (5) in any event, the Severance Letter is not a "release of claims." (*See generally* Dkt. No. 25 [Pls.' Opp'n Mem. of Law].)

Generally in its reply, Defendant argues as follows: (1) Plaintiff Parker and all similarly situated employees who executed Severance Letters waived their right to seek relief for claims related to their employment under the N.Y. Lab. Law (including 12 NYCRR §142-2.2) against Defendant because, in the Severance Letters, the employees clearly, knowingly, and voluntarily released Defendant from liability arising from the referenced claims; and (2) the Court may consider the Severance Letter in deciding Defendant's motion because it is integral to Plaintiffs' Amended Complaint (which is based on, *inter alia*, the terms and conditions of Plaintiff Parker's termination) and, in any event, this Court has discretion to convert a motion to dismiss for failure to state a claim into a motion for partial summary judgment. (*See generally* Dkt. No. 28 [Def.'s Reply Mem. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at

212, n.17 (citing Supreme Court cases) (emphasis added).[2]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

---

[2] *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8

7

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3]

---

[3] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the

### B.     Legal Standards Governing Plaintiffs' Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiffs' claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for the review of the parties. (*See generally* Dkt. No. 21, Attach. 1 [Def.'s Mem. of Law]; Dkt. No. 25 [Plfs.' Opp'n Mem. of Law]; Dkt. No. 28 [Def.'s Reply Mem. of Law].)

### III.    ANALYSIS

After carefully considering the matter, the Court grants Defendant's motion for the reasons stated in Defendant's memoranda of law. (Dkt. No. 21, Attach. 1 [Def.'s Mem. of Law]; Dkt. No. 28 [Def.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

With regard to the first argument asserted in Plaintiffs' opposition memorandum of law, the Court is uncertain how a declaration of Defendant's Senior Vice President of People Operations Charles Schwab can possibly render Plaintiffs' second claim in their Amended Complaint "plausibly" pleaded for purposes of *Twombly* and *Iqbal*. As Plaintiffs themselves acknowledge, this declaration may not be considered by a Court when deciding a motion to dismiss for failure to state a claim. (Dkt. No. 25, at 7-8 [attaching pages "11" and "12" of Pls.' Opp'n Mem. of Law].) Unlike the Severance Letter, the terms and effect of the declaration were

---

complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

9

not relied on heavily by Plaintiffs in their Amended Complaint.  Moreover, to the extent that Plaintiffs attempted to argue merely that Defendant (in its motion papers) has conceded that Plaintiffs have adequately pleaded the "fail to pay" element of their second claim, that argument misses the point of Defendant's motion: Defendant does not challenge the pleading sufficiency of Plaintiffs' "failed to pay" allegation, but argues that Plaintiff Parker waived his right to assert the second claim.

With regard to Plaintiffs' second argument, their reliance on the Court's decision in *Praileau* (for their argument that their filing of the Amended Complaint moots Defendant's motion) is disingenuous.  It is difficult to believe that Plaintiffs' counsel had not read the paragraph following the language on which they rely: in that paragraph, the Court invoked the common-sense point of law that an amended complaint does not moot a challenge to an original complaint under Fed. R. Civ. P. 12(b)(6) when that amended complaint does not cure the pleading defects identified in the original complaint.  *Praileau v. Fischer*, 930 F. Supp. 2d 383, 388 (N.D.N.Y. 2013) (Suddaby, J.).  That is precisely why the Court issued its Text Order of June 14, 2017, directing Defendant to file its letter-brief of June 21, 2017.  (Dkt. Nos. 26, 27.)

With regard to Plaintiffs' third argument, this argument ignores the fact that Defendant's motion does not challenge Plaintiffs' second claim (or their first claim) to the extent that the claim is asserted by Plaintiff Bartlett; rather Defendant's motion challenges only Plaintiffs' second claim to the extent that it is asserted by Plaintiff Parker.

With regard to Plaintiffs' fourth argument, the Court finds that, while the question is admittedly somewhat of a close one, Plaintiff Parker's Severance Letter is indeed integral to Plaintiffs' Amended Complaint.  *Pesserillo,* 78 F. Supp. 3d at 554-555.  The Amended

10

Complaint relies heavily upon the Severance Letter's terms and effect: specifically, (1) the last date of Plaintiff Parker's employment with Defendant, (2) Plaintiff Parker's daily rate of pay, and (3) Plaintiff Parker's rights under New York State law, rules, or regulations.  (*Compare* Dkt. No. 23 at ¶¶ 9, 23, 24, 51 [Pls.' Am. Compl., relying on the fact that Plaintiff Parker's employment with Defendant ended on October 5, 2016, that his daily rate of pay as a Fuel Technician had been at least $205, and that he was allegedly entitled to more pay under New York State law and regulations] *with* Dkt. No. 21, Attach. 3, at 1-2 [Severance Letter stating that Plaintiff Parker's employment with Defendant ended on October 5, 2016, indicating that Plaintiff Parker's rate of pay for a "shift" was $224.95, and stating that Plaintiff Parker waived his rights under New York State law, rules, or regulations].)  *See Pesserillio v. Nat'l Grid,* 78 F. Supp. 3d 551, 554-55 (E.D.N.Y. 2015) (deeming "Agreement and General Release" to be integral to Complaint asserting disability-discrimination claim).  Moreover, based on the current record, no dispute exists regarding the Severance Letter's authenticity, accuracy, or relevance.  (Dkt. No. 21, Attach. 2, at ¶ 5 [Decl. of Schwab, adducing the Severance Letter as an Exhibit]; Dkt. No. 25 [Pls.' Opp'n Mem. of Law, failing to challenge the authenticity, accuracy, or relevance of the Severance Letter].)

With regard to Plaintiff's fifth argument, the Court notes that the mere fact that the release is titled a "Severance Letter" does not change the nature of the agreement.  *See Difilippo v. Barclays Capital, Inc.,* 552 F. Supp. 2d 417, 427 (S.D.N.Y. 2008) (dismissing plaintiff's cause of action pursuant to the N.Y. Lab. Law due to a severance agreement executed by plaintiff).  Moreover, the Court finds that, from the face of the Severance Letter, it appears that Plaintiff Parker executed the release knowingly and voluntarily.  The determination of whether a waiver

11

is knowingly and voluntary depends on the "totality of the circumstances" including the following factors:

> (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney; (6) whether the consideration given in exchange for the waiver exceeds any benefits to which the employee was already entitled by contract or law; (7) whether an employer encouraged or discouraged the employee to consult with an attorney; and (8) whether the employee had a fair opportunity to consult with an attorney.

*Laramee v. The Jewish Guild for the Blind*, 72 F. Supp. 2d 357, 360 (S.D.N.Y. 1999). The factors are not exhaustive nor must all of the factors be satisfied before a release is enforceable. *Laramee,* 72 F. Supp. 2d at 360; *Matusovsky v. Merrill Lynch,* 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); *Livingston v. Bev-Pak, Inc.*, 112 F. Supp. 2d 242, 247 (N.D.N.Y. 2000) (Smith, M.J.); *Pesserillo v. Nat'l Grid*, 78 F. Supp. 3d 551 (E.D.N.Y. 2015).

First, Courts have held that, with regard to the amount of time the plaintiff had possession of or access to the agreement before signing, "even a few hours will suffice." *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 130 (S.D.N.Y. 2012); *see also Shain v. Center for Jewish History,* 04-CV-1762, 2006 WL 3549318, at *4 (S.D.N.Y. Dec. 7, 2006) (holding that "several hours" to review the release was sufficient); *Cordoba v. Beau Dietl & Assocs.,* 02-CV-4951, 2003 WL 22902266, at *5 (S.D.N.Y. Dec. 8, 2003) (holding four days to review release was sufficient); *Dewey v. PTT Telecom Neth., US, Inc.*, 101 F.3d 1392 (2d Cir. 1996) (holding four days was sufficient to review release and noting that, "although [plaintiff] did not consult an attorney prior to signing the release, there is nothing to indicate that she did

not have the opportunity to do so"). Here, it is clear that Plaintiff Parker had twenty-one days to review, consider, and decide whether to execute the Severance Letter. (Dkt. No. 21, Attach. 3 [Ex. 1 to Aff. of Charles E. Schwab, sworn to May 25, 2017].) In addition, Plaintiff Parker was entitled to revoke the Severance Letter within seven days after signing. (*Id*.)

Second, the language in the two-page Severance Letter is unambiguous and clear that, by signing the agreement in exchange for approximately $2,433.94, Plaintiff Parker expressly agreed to "knowingly and voluntarily release, waive and forever discharge Savage, its shareholders, officers, directors and affiliates from any lawsuits on [his] behalf and all claims, rights and causes of action, known or unknown, arising out of or associated in any way whatsoever with [his] employment or lack thereof with Savage or its affiliates, including but not limited to, claims or rights arising under any and all federal, state or local laws, rules and regulations." (Dkt. No. 21, Attach. 3 [Ex. 1 to Aff. of Charles E. Schwab, sworn to May 25, 2017].)

Third, Plaintiff Parker received benefits to which he otherwise would not have received in consideration for executing the Severance Letter. *Brewer v. GEM Indus. Inc.*, 14-CV-00778, 2015 WL 773800, at *7 (N.D.N.Y. Feb. 24, 2015) (D'Agostino, J.); *Hsueh v. The Bank of New York*, 05-CV-5345, 2006 WL 2778858, at *5 (S.D.N.Y. Sept. 26, 2006). According to the Severance Letter, Plaintiff Parker received (1) payment for ten shifts in the amount of $2,249.50, less applicable withholding taxes, and (2) payment for 9.25 unused hours of PTO in the amount of $173.44, less applicable taxes. Plaintiff Parker alleges that the consideration of $2,249.50 "could very well have been paid pursuant to Defendant's severance policy, it [*sic*] could be for wages already earned, etc." (Dkt. No. 25, at 13 [attaching page "9" of Pls.' Opp'n Mem. of

13

Law].)  The Court is not persuaded.  The letter is expressly labeled "Severance Letter" as opposed to something else such as "Back Wages Letter"; and "severance pay" is defined by *Black's Law Dictionary* as "[m]oney (apart from back wages or salary) paid by an employer to a dismissed employee . . . sometimes shortened to severance."  *Black's Law Dictionary* at 1498 (9th ed. 2009).  Moreover, the amount was expressly characterized as being "[i]n consideration of [Plaintiff Parker] agreeing to" several conditions.  (Dkt. No. 21, Attach. 3, at 2.)  Thus, the Court finds that Plaintiff Parker received benefits to which he otherwise would not have received.

Fourth, the Severance Letter contemplates that Plaintiff Parker may discuss the terms and conditions with an attorney.  (Dkt. No. 21, Attach. 3 [Ex. 1 to Aff. of Charles E. Schwab, sworn to May 25, 2017].)  While this fact is distinguishable from encouraging Plaintiff Parker to discuss the matter with an attorney, it makes clear that Plaintiff Parker had, as was reminded of, the opportunity to consult an attorney (whether he opted to exercise it or not).  *Dewey v. PTT Telecom Neth., US, Inc.*, 101 F.3d 1392 (2d Cir. 1996).

Fifth, Plaintiff Parker has not alleged, or even argued, that he was coerced into entering the Severance Letter, under duress or incapacitated at the time it was executed, or subjected to anything that would call the enforceability of the Severance Letter into question.  *Montanez v. Cheesecake Factory Rests., Inc.*, 13-CV-1262, 2016 WL 1117516, at *7 (N.D.N.Y. Mar. 22, 2016) (Suddaby, C.J.).

For all of these reasons, Defendant's motion to dismiss is granted.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that the second claim of Plaintiffs' Amended Complaint (Dkt. No. 23) is **DISMISSED** to the extent it is asserted by Plaintiff Parker; and it is further

**ORDERED** that Defendant file an answer to the Plaintiffs' Amended Complaint within FOURTEEN DAYS of the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a), and this case is referred back to Magistrate Judge Hummel for a Rule 16 conference and the setting of pretrial scheduling deadlines.

Dated:    February 5, 2018
          Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge